## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**PATRICIA FOREHAND**                                              **PLAINTIFF**

**VS.**                           **No. 3:21-cv-00223 PSH**

**KILOLO KIJAKAZI, Acting Commissioner,**
  **Social Security Administration**                        **DEFENDANT**

### ORDER

Plaintiff Patricia Forehand ("Forehand"), appeals the final decision of the Acting Commissioner of the Social Security Administration (defendant "Kijakazi") to deny her claim for Disability Insurance benefits ("DIB"). Forehand contends the Administrative Law Judge ("ALJ") erred in two ways: (1) by wrongly assessing the opinion of her treating physician Dr. Darrell G. Ragland ("Ragland"); and (2) by improperly evaluating her credibility. The parties have ably summarized the testimony given at the administrative hearing conducted on February 10, 2021. (Tr. 121-165). The Court has carefully reviewed the record, including the medical records, to determine whether there is substantial evidence in the administrative record to support Kijakazi's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from June 4, 2019, when Forehand last worked, through March 25,

2021, the date of the ALJ's decision.

*The Administrative Hearing:*

In response to questions posed by the ALJ, Forehand stated she was 55 years old, with a high school education and past work experience as a nurse technician, a pharmacy technician, and an assembly worker. Forehand quit her job as a pharmacy technician "because I was in so much pain that I couldn't do it" and had not sought employment thereafter. (Tr. 137). Forehand lived with her husband. She has eight grandchildren who occasionally visit on weekends. Forehand indicated she uses the internet for Google searches and Facebook (maybe 15 minutes a day).

In response to questions from her attorney, Forehand explained she had back surgery on her lower spine ten years earlier and was told future surgeries were not possible due to scar tissue, bone spurs, and arthritis. She described returning to work after the surgery but struggling with lifting requirements ("I would actually go to the bathroom just to get a break because my back would hurt me so bad." (Tr. 140)). She stated she missed work often and was placed on intermittent medical leave in 2015. She estimated she missed four to five days a month in the last months she worked in 2019, and could not keep up with her work quota.

Forehand described the low back pain as radiating down her leg. She also noted hip issues, neuropathy in her feet, and pain and burning in both feet and hands.

2

Forehand also indicated she is diabetic, and could stand for 20-30 minutes, sit for about 15 minutes, and recline for about 30 minutes before needing to change positions. Forehand said physical therapy was not successful, and her primary care physician recommended she not go to a pain management program. At the time of the hearing, Forehand used a heating pad, pain medication, and a walker (prescribed for her mother) for the back issues. Side effects from the pain medications were dizziness, weakness, and sleepiness, according to Forehand.

Forehand testified she received help from her husband and daughter with daily activities. Her husband assisted her in making her way to the bathroom at night and returning to bed, and her daughter helped two days a week with taking showers, washing her hair, preparing meals, and doing housework. Forehand indicated she could fold if someone else removed clothes from the dryer, she could dust and cook a small meal by sitting in front of the stove, and she could unload dishes from the top of the dishwasher. Trying to raise her hands caused dizziness, lightheadedness, and pain. Her hand pain prevented her from applying makeup, something she formerly did daily but could no longer do without assistance from her daughter. She described going out very little – not going to church much since the onset of COVID, not mingling with friends, and going on occasion with her daughter to the pharmacy and Wal-Mart, where she utilized an electric cart.

3

Forehand estimated she could lift a gallon of milk but could not lift a 12-pack of sodas. She dressed with pullovers rather than button-ups, except when her daughter assisted. Putting on the pullovers caused dizziness. She no longer painted or shopped, and gauged herself to be in bed 3-4 hours a day, with the remainder of a typical day in a recliner.

The ALJ asked additional questions, and Forehand agreed that on a typical day she would be lying down for almost 24 hours. She stated she had been using her mother's walker for about 14 months, but did not use it every time she left the house. According to Forehand, her diabetes was being treated by an endocrinologist who prescribed insulin and Metformin. She saw the endocrinologist every four months, and she tested her blood sugar four times daily. Forehand also testified to taking at least two hydrocodone pills every day for at least a year for pain, and to taking daily medication for dizziness, nausea, neuropathy, and thyroid issues. Forehand stated she had no testing for neuropathy, was not being seen by a neurologist, and was unable to do any form of exercise. When asked about Dr. Ragland's instructions in June 2020 to walk for exercise, Forehand said she walked around the house but not outside. Although she had a valid driver's license, Forehand said she had not driven in about four months.

Ken Jones ("Jones"), a vocational expert, characterized Forehand's past work

as a pharmacy technician as a semi-skilled light exertional job.  The ALJ posed a series of hypothetical questions to Jones, first asking him to consider a hypothetical worker of Forehand's age, education, and experience, who could perform light work with the following restrictions:  could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could not climb ladders, ropes, or scaffolds;  and could not work around unprotected heights, open flames or unprotected, dangerous moving machinery.  Jones responded that such a worker could perform Forehand's past relevant work as a pharmacy technician.  In addition, Jones identified other light jobs which the hypothetical worker could perform – marker, cashier II, and sales attendant.  The ALJ then altered the hypothetical, limiting the worker to using an assistive device.  Jones opined such a worker would be limited to sedentary work. (Tr. 159-164).

   *ALJ's Decision:*

   In his March 22, 2021, decision, the ALJ determined that Forehand had the following severe impairments: Meniere's disease with vertigo; obesity; and degenerative disc disease of the lumbar spine.  The ALJ found that other impairments (hypothyroidism, conductive hearing loss, diabetes mellitus, and adrenal insufficiency) were non-severe.

   The ALJ also determined that Forehand's mental impairments of depression and

anxiety were non-severe, detailing the objective medical findings and considering the "paragraph B" criteria regarding mental impairments.  The ALJ found Forehand had a mild limitation in all four functional areas:  understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.

The ALJ found Forehand did not have an impairment or combination of impairments that met a listing in 20 C.F.R.  Part 404, Subpart P, Appendix 1.  Specifically, the ALJ discussed Listing 1.04 (degenerative disc disease) and Listing 2.07 (labyrinthine-vestibular function with balance disturbance, etc.), and the ALJ also addressed Forehand's obesity.

The ALJ assessed Forehand to have the residual functional capacity ("RFC") to perform a range of light work with the restrictions which mirrored those detailed in the initial hypothetical question posed to Jones.  The ALJ assessed Forehand's subjective allegations, finding her statements "not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 43).  The ALJ summarized the medical evidence.

The ALJ addressed the July 2020 opinion of Dr. Ragland as follows:

In July 2020, Darrel Ragland, M.D., completed a checkbox form in which he opined the claimant could stand or walk for 30 minutes at a time but no more than two hours in an 8-hour workday, could frequently lift less than ten pounds and is unable to reach in any direction or handle

for gross manipulations. Dr. Ragland also opined the claimant could never climb, balance, crouch or bend and could occasionally stoop. He stated the claimant would require frequent and longer than normal rest breaks, would need to shift from sitting to standing, would not have the stamina to complete a normal workweek or maintain a fulltime schedule and would be absent from work more than three days per month. Dr. Ragland further opined the claimant must avoid all exposure to extreme heat, high humidity, soldering fluxes and solvents and cleaners. He stated that opinion covers a four-month period from June 2020 through September 2020. This opinion is unpersuasive. First, the opinion is for a limited time and is apparently not meant to reflect ongoing limitations. Additionally, it is not consistent with or supported by the objective findings or the claimant's course of treatment. The record does not show the existence of a medically determinable impairment that precludes the ability to reach or handle. This opinion is also internally inconsistent as it indicates the claimant cannot bend but can occasionally stoop. "Bend" is not defined as a work related activity, and stooping is essentially bending at the back or neck, thus it is inconsistent that the claimant could never bend but could occasionally stoop. In support of his opinion on this form, Dr. Ragland cites an MRI of the lumbar spine that showed degenerative disc disease with "mild" canal narrowing and an MRI of the knee that showed a tear of the lateral meniscus. However, the MRI of the knee was from 2015. Records show the claimant was able to continue substantial gainful activity at a job where she was doing heavy lifting (50-75 pounds) despite this condition. Additionally, the claimant did not have treatment relating to the knee after June 4, 2019, which certainly suggests the impairment was of little or no consequence to her functioning.

(Tr. 44-45).

The ALJ concluded that Forehand was capable of performing her past relevant work as a pharmacy technician. Alternatively, the ALJ found Forehand could perform other jobs that exist in significant numbers in the national economy. This finding was based upon the expert testimony of Jones. Accordingly, the ALJ decided Forehand

was not disabled.  (Tr. 34-47).

*Forehand's First Claim – the ALJ wrongly assessed Ragland's opinion.*

Forehand contends the ALJ failed to comply with the relevant regulations for evaluating medical opinion evidence when considering the opinions of treating physician Ragland, who offered his opinions in July 2020.  (Tr. 1048-1049).

The regulations governing the consideration of the medical opinions were revised for claims filed on or after March 27, 2017.  Forehand filed her claim in October 2019.   The new regulations eliminated the "long-standing 'treating physician' rule." *See Fatuma A. v. Saul*, 2021 WL 616522, 5 (D. Minn. 2021), report and recommendation adopted, 2021 WL 615414 (D. Minn. 2021).  The regulations now provide for a new method of consideration, as described below:

> ... Under the new regulatory scheme, the Commissioner "will not defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. 404.1520c(a). Instead, ALJs will determine the persuasiveness of each medical source or prior administrative medical findings based on supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).
> The new articulation requirements are meant to "provide individuals with a better understanding of [the Commissioner's] determinations and

decisions" and "provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017). ...

*See Phillips v. Saul*, 2020 WL 3451519, 2 (E.D. Ark. 2020) (Deere, MJ).

The new regulations require the ALJ to discuss, at a minimum, the supportability and consistency of a medical opinion. Forehand concedes that the ALJ discussed supportability and consistency, but faults the manner in which the ALJ assessed these factors. Forehand cites four errors committed by the ALJ in evaluating Ragland's opinions.

The first error, according to Forehand, is the ALJ's misplaced reliance on the limited time period noted in Ragland's medical source statement. Ragland, who began to treat Forehand in May 2018, limited his opinions to a four month period ending in September 2020.[1] Forehand faults the ALJ for drawing a negative inference from this four-month time limitation, claiming it was "sheer speculation" for the ALJ to conclude that Ragland's opinion "apparently (is) not meant to reflect ongoing

---

[1]

Ragland saw Forehand about 16 times in the relevant period for disability purposes, beginning in June 2019. Not all of these visits dealt with back pain. Forehand saw Ragland three weeks after the July 2020 medical source statement, after she had been in the hospital with abdominal pain. Ragland instructed her to rest, take fluids, and avoid contact sports, "which will be relatively easy for her as she is just not able to do much at the current time." (Tr. 975). Ragland saw Forehand two more times during the relevant period, once for a six-month followup in September 2020, and again in May 2021, when Ragland recommended "lifestyle benefits of daily walking 30 minutes a day changing the diet to a healthy diet and trying to get some weight off." (Tr. 8).

limitations."  Docket entry no. 10, page 44 (quoting from ALJ's decision (Tr. 44)).

Ragland's opinion, however, unambiguously applies to only the four month period in

2020.  Forehand is required to prove a disability that has lasted or can be expected to

last for a continuous period of not less than 12 months.  Debating Ragland's intentions

and opinions outside of the four-month period is of no benefit when he explicitly

confined his opinions to June – September 2020.   The ALJ did not err in taking

Ragland at his word, and there is no merit to this argument.

Forehand's  remaining  three  arguments  fall  prey  to  the  same  timing  flaw

asserted in her first challenge.  These arguments are ALJ error in: (1) evaluating

Ragland's opinion regarding her ability to reach and handle; (2) finding Ragland

internally inconsistent when he noted she could never bend but occasionally could

stoop; and (3) discrediting Ragland because he relied upon a 2015 MRI to reach his

conclusions.  The Court has considered the merits of these three arguments, and finds

them less than compelling.  And even if the Court assumed these arguments to be

meritorious, they would only demonstrate Forehand's condition for four months in

2020, falling short of satisfying her burden of showing disability for a continuous

period of not less than 12 months.  "Even an opinion from a treating physician will not

be conclusive of disability if the impairment does not meet the duration requirements

of the Act."  *White v. Commissioner of Social Security*, 2019 WL 435005, W.D. N.Y.

(September 11, 2019) (citing *Rice v. Barnhart*, 127 F.App'x 524, 526 n.1 (2d Cir. Mar. 31 2005) (treating physician's finding that claimant was disabled for four-month period not indicative of disability)).

    *Claim Two – the ALJ improperly assessed Forehand's credibility.*

    As part of assessing the claimant's RFC, the ALJ is required to evaluate the subjective statements of the claimant. *See Pearsall v. Massanari*, 274 F.3d 1211 (8th Cir. 2001). The ALJ does so by determining whether the claimant has a medically determinable impairment that could reasonably be expected to produce pain or other symptoms and, if so, evaluating the intensity, persistence, and limiting effects of the pain or other symptoms. *See* Social Security Ruling ("SSR") 16-3p. In making the latter evaluation, the ALJ must consider all the evidence, including information about the claimant's prior work record, and evidence of the following factors:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms . . . ; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 16-3p. The ALJ is not required to explicitly discuss each relevant factor. *See Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

11

Forehand faults the ALJ's evaluation of her subjective statements, alleging that the ALJ addressed only the objective medical evidence and the medical opinions, neglecting to address any of the other relevant factors, including her lengthy work history. "The ALJ discredited Forehand's testimony solely because, in her view, it was not supported by the medical evidence." *Plaintiff's brief*, page 51.

While Forehand is correct that the ALJ did not explicitly address her work history[2] in evaluating her subjective statements, the ALJ's overall treatment of her statements is supported by substantial evidence. The ALJ considered more than the objective medical evidence and opinions in evaluating Forehand's subjective statements. The ALJ noted Forehand's failure to follow treatment recommendations, such as physical therapy, and the absence of any prescription for an assistive device. The ALJ, citing SSR 16-3p, acknowledged the proper framework for analyzing Forehand's subjective statements. The ALJ also considered Forehand's testimony and reports of daily activities.[3]

---

[2]

The ALJ was not unaware of Forehand's work, mentioning it at several points. For example, the ALJ cited Forehand's return to work following surgery ten years earlier and her termination of work in 2019. (Tr. 40).

[3]

The ALJ concluded: "The undersigned considered the claimant's allegations and found them neither consistent with nor well supported by the objective medical findings, the claimant's statements about her activities, her medication regimen, her doctor's observations, and the opinions of the State agency consultants." (Tr. 45).

As noted, an ALJ is not obligated to list and address every factor. *Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005). And while the ALJ could have addressed more factors, he provided an adequate basis for his evaluation of Forehand's subjective statements. There is no merit to Forehand's second claim.

In summary, the Court finds that the ultimate decision of Kijakazi was supported by substantial evidence. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Kijakazi is affirmed and Forehand's complaint is dismissed with prejudice.

IT IS SO ORDERED this 8th day of November, 2022.

_____
UNITED STATES MAGISTRATE JUDGE